FABE, Chief Justice,
with whom MAASSEN, Justice, joins, dissenting in part.
We have long held that it is "the norm" for a parent to have unrestricted, unsupervised visits with his child.[1] Only last year we held that even where supervised visitation is temporarily required, "absent a compelling reason to the contrary that is supported by the record, the court must establish a plan or criteria for ending the supervision requirement.[2] But for almost two and one-half years, Matthew P. has only been able to visit his daughter Valerie if they are accompanied by a supervisor "acceptable to both parties," which has interfered with and reduced his parenting time.[3] And because the superior court has never identified any benchmarks by which Matthew might achieve unsupervised visits, there is no end in sight. In my view, the superior court's failure to establish a concrete "plan by which unsupervised visitation can be achieved"[4] amounts to an abuse of discretion.
*1050 Our cases demonstrate that courts can only deviate from establishing a concrete plan by which a parent can achieve unsupervised visits for truly compelling reasons. Last year's decision in Yelena R. v. George R.[5] proves the point. There, we held that the superior court abused its discretion when it did not provide a plan toward unsupervised visits for a mother even after she improperly removed the children from Alaska and took them to Massachusetts.[6] If it was an abuse of discretion not to create a plan for unsupervised visits for a mother who improperly took her children across the continent, it was all the more so an abuse of discretion not to create a plan here, where the superior court's dissatisfaction with Matthew's parenting was much more nebulous.[7]
A survey of our prior cases indicates that trial judges have accompanied the requirement of supervised visitation with concrete plans for achieving unsupervised visits for parents who have displayed behavior much more troubling than Matthew's. We have approved a superior court's plan toward unsupervised visits for a father who "was verbally abusive, drank heavily, struck the children," assaulted his wife, and "refused to return the children after his visitations on multiple occasions"; the plan was based on "the findings of [a psychological] evaluation and [the parent's] follow-through on any ree-ommendations."[8] We have also approved a plan for achieving unsupervised visits for a mother who refused to enter addiction treatment and whose daughter testified that she used drugs, noting that such a plan "provided [the mother] with a means for regaining unsupervised and summer visitation of [her daughter] should she wish to do so"; the plan required that the mother complete "a rigorous clinical assessment showing she was clean and sober."[9] And even when we did not initially require "a specific plan" toward regaining unsupervised visits for a mother with a "history of secreting away her daughter from [the daughter's father], as well as ... not telling [the father] exactly where the child was here in Alaska for a period of time," [10] we directed that when she had participated in counseling and classes to eliminate her risk of harming or abducting her child, "she [could] ask the court to revisit the requirement of supervision and to create a plan for eventually eliminating that restriction."[11]
Here, Matthew has not exhibited any behavior as extreme as the parents above who received the benefit of a concrete plan toward unsupervised visits. There is no evidence that Matthew has a problem with substance abuse. The superior court acknowledged that Matthew had completed a state-certified batterer intervention program after breaking Gail's car window when she was not in the vehicle. And no party has alleged that Matthew poses a flight or abduction risk. Yet unlike in our prior cases, the superior court has not told Matthew what he must do to gain the ability to visit his daughter without a supervisor.
Contrary to the court's reading, the superi- or court did not identify a specific plan by which Matthew could move to unsupervised visits-a conundrum which has existed for nearly two and one-half years. The superior court's written order did direct Matthew to "obtain a full and complete independent psychological evaluation by a licensed clinical psychologist," but it did not indicate any connection between completing that requirement and a change in the visitation order. Similarly, the superior court referenced the possibility of reconsideration if "there are no *1051 longer any reports of negative information that flow[s] from [Matthew to Valerie]," but it did not explain how Matthew can meet this goal, given that the last such "report" was more than a year earlier. The superior court's spoken directions were vague and explicitly couched in the language of "encouragement": the superior court noted that it "encouraged [Matthew] to enter and engage in therapy," and "to engage in visitation with his daughter, and take every minute that he can that's available to him with his daughter," but it specified that it was "not going to direct him doing it, I'm going to encourage him to do that." The superior court also suggested that if Matthew could demonstrate that he "is getting or has gotten better" then "perhaps the [superior] court will take a look at it." (Emphasis added.) Yet there is no evidence in the record that Matthew has any psychological difficulties, so it is unclear what he must address in order to "get better."[12] This is not a "plan by which unsupervised visitation can be achieved."[13]
The simple fact is that nobody-not this court, not Gail, and most importantly not Matthew-knows what Matthew needs to do to move toward unsupervised visitation with Valerie. Indeed, the superior court's remarks that "a single parent can raise a child just as well as two parents" and that "sometimes that has to happen for the betterment of the child" suggests that the superior court is comfortable with Matthew never achieving unsupervised visitation, in direct contradiction of our caselaw.[14]
Because the superior court violated the requirement that "absent a compelling reason to the contrary that is supported by the record, the court must establish a plan or criteria for ending the supervision requirement," [15] I would hold that in this regard it abused its discretion. Thus I respectfully dissent from the court's conclusion that this aspect of the superior court's decision in this case can be affirmed and would remand the case for the development and articulation of a concrete plan under which Matthew can achieve unsupervised visitation within a relatively short time. ‘
FABE, Chief Justice, with whom MAASSEN, Justice, joins dissenting in part.

. J.F.E. v. J.AS., 930 P.2d 409, 409 (Alaska 1996).

. Yelena R. v. George R., 326 P.3d 989, 1003 (Alaska 2014).

. Matthew testified that he has had difficulty identifying a consistently available supervisor since Gail removed Valerie from the Catholic Community Services program, and as a result he has not been able to see Valerie as often as the visitation plan anticipates.

. Rodvik v. Rodvik, 151 P.3d 338, 345 (Alaska 2006) (quoting Fardig v. Fardig, 56 P.3d 9, 14-15 (Alaska 2002)).

. 326 P.3d 989 (Alaska 2014).

. See id. at 1000, 1002-03.

. The superior court faulted Matthew for being "'very self-contained," a trait the court worried Valerie "thinks she should be portraying." The superior court was also "convinced that [Matthew was! giving [Valerie] information he © shouldn't be giving her" and "somehow offering negative information about her mother to her." And the court believed that the relationship between Matthew and Valerie was "not healthy" because "she sees herself as a care giver for her 8 father."

. Rodvik, 151 P.3d at 341, 345.

. Fardig, 56 P.3d at 15.

. Monette v. Hoff, 958 P.2d 434, 436 (Alaska 1998) (first alteration in original).

. Id. at 437.

. The one trained therapist who had personally observed Matthew and Valerie together testified by affidavit that "their interactions are very healthy," that "[they have very good communication with each other," and that Matthew was not "an 'alienating parent.'" This expert also recommended that Matthew be allowed to visit Valerie without supervision and believed that ''the supervision has been harmful to [Valerie]."

. Rodvik, 151 P.3d at 345 (quoting Fardig, 56 P.3d at 14-15).

. The superior court's comparison of this situation to one in which "a single parent must raise a child and do the best they can, [because] either the other parent has left, or the child's ... other parent has decided not to take responsibility for raising that child," is particularly puzzling in the context of rejecting a parent's request for more involvement with his child.

. Yelena R. v. George R., 326 P.3d 989, 1003 (Alaska 2014).