*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| FAYE H., | ) | |
| | ) | Supreme Court No. S-15566 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-11-00356 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JAMES B., | ) | |
| | ) | No. 6997 – April 17, 2015 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Charles T. Huguelet, Judge.

Appearances: Kenneth W. Cole, Law Offices of Kenneth W. Cole, Kenai, for Appellant. Linn J. Plous, Kenai, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

I.      INTRODUCTION

Alaska Statute 25.24.150(g) creates a rebuttable presumption that a parent with a "history of perpetrating domestic violence" shall not be awarded sole or joint physical custody in a child custody case. A "history of perpetrating domestic violence" is found where a parent either causes serious physical injury during one incident of domestic violence or engages in more than one domestic violence incident.

Here the superior court awarded the parents joint physical custody of their daughter, finding that although the father had committed domestic violence, it was "not of a degree or frequency" to trigger the presumption. But the court's factual findings were ambiguous as to whether the father committed more than one act of domestic violence. We therefore remand for further findings on this issue.

## II.    FACTS AND PROCEEDINGS

Faye H. and James B.[1] began a long-distance relationship in late 2009 or early 2010, with Faye residing in Las Vegas, Nevada, and James in San Diego, California. The couple moved to Alaska together in May 2010 and were never married. They had one child together, Hannah, who was born in March 2011.

The parties separated shortly after Hannah's birth. James, citing Faye's alleged substance abuse and seeking primary custody of Hannah, petitioned for a domestic violence protective order. The district court entered a temporary, 20-day order granting James physical custody of Hannah and allowing supervised visitation with Faye. Several days later Faye similarly petitioned for a protective order, alleging that James had been "violent and abusive." The district court scheduled a hearing on the requested order. A magistrate judge then modified the original 20-day order to allow Faye unsupervised visitation with Hannah, on the condition that Faye participate in random drug testing.

The magistrate judge also ordered that the parties' long-term protective order petitions be heard at the same time, and both parties appeared with counsel at the subsequent hearings. The magistrate judge granted Faye's motion for a long-term protective order, denied James's, and ordered an equal physical custody arrangement. The long-term protective order contained a finding that James committed or attempted

---

[1]    We use pseudonyms for all family members.

to commit the crime of "assault or reckless endangerment" against Faye. The order also contained a no-contact provision under which James was not to "telephone, contact, or communicate in any way, directly or indirectly" with Faye except "through an attorney," "by email to discuss matters relating to [Hannah]," or "through a notebook that travels with [Hannah]." James was also prohibited from coming within 500 feet of Faye's residence and ordered to "stay away from, and not telephone or contact" her place of employment.

James filed a complaint seeking sole legal and primary physical custody of Hannah. The superior court described the custody case that followed as one of "extremely high conflict . . . with an unusually high number of motions, requests for expedited consideration, and emotional hearings," only some of which are relevant to this appeal.

While the case was pending, the State filed several criminal charges against James for violating the domestic violence protective order,[2] sexually abusing and assaulting his significant other's four-year-old son,[3] indecent viewing or photography,[4] and criminally misusing a computer.[5] None of these charges resulted in a conviction. But during the criminal proceedings, the superior court held an interim custody hearing and awarded interim legal and physical custody to Faye. The court also appointed a guardian ad litem. James's contact with Hannah was initially suspended, but the court later restored supervised visitation.

---

[2]     *See* AS 11.56.740(a)(1).

[3]     *See* AS 11.41.210(a)(1), .220(a)(1)(c), .436(a)(2).

[4]     *See* AS 11.61.123(a)(2).

[5]     *See* AS 11.46.740(a)(1).

The superior court held a trial at which both parties were represented. In its post-trial findings and conclusions, the court determined that an equal physical custody arrangement was in Hannah's best interests and awarded sole legal custody to Faye. With respect to the issue of domestic violence, the court stated at the outset of its analysis:

> Generally, the court must determine custody in accordance with the best interests of the child, and if the case involves certain kinds of domestic violence, the court must employ an additional rebuttable presumption when analyzing the custody and visitation decisions. The court finds that the domestic violence perpetrated by [James] was not of a degree or frequency to trigger the AS 25.24.150(h) presumption.

The court further discussed the issue of domestic violence in its analysis of the statutory best interests factors, requiring a court to consider — as one of nine factors — "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents."[6] The court noted that

> [t]here is evidence that [James] physically abused [Faye]. Although [Faye] does not appear to have been seriously injured, and although the abuse was not continuous, it is an area of concern for the court. The abuse suggests [James], when experiencing acute periods of relationship stress, may have some difficulty regulating his emotions. [James] is, however, an intelligent man who is capable of learning from his mistakes and changing for the better.

The court also found "no credible evidence" that James ever committed child abuse, noting that he was "found not guilty of several allegations" with respect to his significant other's four-year-old son and that "the remaining charges were dismissed by the [S]tate." Although the court made no specific findings as to whether James

---

[6]     *See* AS 25.24.150(c)(7).

violated the domestic violence protective order, it noted the State's dismissal of that criminal charge. And the court made no specific findings as to whether other particular incidents of alleged domestic violence against Faye occurred.

Faye moved for reconsideration, arguing that in light of James's "many instances" of domestic violence, the domestic violence presumption should have been triggered. The superior court denied Faye's motion for reconsideration, first noting that as we have held, "when the record shows that domestic violence has occurred and the trial court so finds, it is plain error for the court not to make findings as to whether the domestic violence amounted to a history of perpetrating domestic violence."[7] The court then quoted AS 25.24.150(h), which defines "a history of perpetrating domestic violence." Finally the court concluded that it made the requisite finding — namely, that Faye "was not seriously injured [by James's abuse] and that the abuse was not continuous, therefore, not amounting to a 'history of perpetrating domestic violence' under AS 25.24.150(h)."

Faye then filed this appeal.

## III.  STANDARD OF REVIEW

"Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[8] "But whether the court used the proper legal standard for applying the domestic violence presumption — including whether the court's findings support applying the presumption — is a question

---

**7**     *Williams v. Barbee*, 243 P.3d 995, 1003 (Alaska 2010) (quoting *Puddicombe v. Dreka*, 167 P.3d 73, 77 (Alaska 2007)) (internal quotation marks omitted).

**8**     *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014).

of law, which we review de novo."[9]  "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[10]

## IV.    DISCUSSION

Under AS 25.24.150(g), "[t]here is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."  "A parent has a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused *serious physical injury or* the court finds that the parent has engaged in *more than one incident* of domestic violence."[11]  Faye raises only one point on appeal:  that the superior court erred "by refusing to trigger the rebuttable presumption of AS 25.24.150(g)."

### A.    The Superior Court's Findings Were Insufficient As To Whether James Committed More Than One Act of Domestic Violence Against Faye.

Faye argues that the superior court was required to apply the domestic violence presumption in light of James's repeated "physical and verbal attacks" against her during the relationship.  At trial Faye testified that she "[knew] of at least three" occasions when James committed domestic violence against her.  Faye also testified that on these occasions, James "consistently took [her] phone . . . and [her] keys so that [she] could not go anywhere and . . . could not call anybody."

---

[9]    *Id.*

[10]    *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014) (quoting *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002)) (internal quotation marks omitted).

[11]    AS 25.24.150(h) (emphasis added).

According to Faye, James's first act of domestic violence occurred when Faye was "three or four months pregnant." Faye testified that during this instance, James "grabbed [her] by [the] arm," "pulled [her] by [her] hair," and "dragged" her across a wooden floor. She testified that another incident occurred during "a heated argument," when James "pulled [her] off the bed" and "pulled . . . or pushed [her] into the closet." And Faye testified that "[a]nother incident[] . . . was when [James] choked [her] with his forearm up against the entryway of [their] home." Faye also testified that during one of these incidents, James fired a gun while she was "about five feet away" and that the bullet "went through the master bathroom door."

Additionally, Faye introduced the 2011 domestic violence protective order, which included a finding that James committed or attempted to commit "assault or reckless endangerment."[12] The order did not specify whether there was more than one such incident.

The findings of fact and conclusions of law regarding domestic violence during James and Faye's relationship suggest that the superior court believed James had committed more than one act of domestic violence. In particular the court stated that "the domestic violence perpetrated by [James] was not of a degree or frequency to trigger the AS 25.24.150(h) presumption." The court also concluded that "[t]here is evidence

---

[12]    Faye argues that under the doctrine of collateral estoppel, the superior court was bound by this finding "as to whether [James] committed *acts* of domestic violence." (Emphasis added.) Collateral estoppel indeed "bars the relitigation of issues actually determined in [earlier] proceedings." *Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011) (alteration in original) (quoting *Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 8 n.11 (Alaska 1979)) (internal quotation marks omitted). But Faye has not shown how the superior court's findings were inconsistent with any issue "actually determined" in the parties' domestic violence case, because the protective order states only that James committed at least *one* act of domestic violence. Accordingly we do not need to determine whether collateral estoppel applies here.

that [James] physically abused [Faye]" and noted that "although *the abuse was not continuous*, it is an area of concern for the court. The abuse suggests [James], when experiencing acute *periods* of relationship stress, may have some difficulty regulating his emotions." (Emphasis added.) Finally, in denying Faye's motion for reconsideration, the court stressed that it had "made a finding that [Faye] was not seriously injured and that the abuse was not *continuous*, therefore, not amounting to a 'history of perpetrating domestic violence' under AS 25.24.150(h)." (Emphasis added.)

We have held that "where a superior court finds that domestic violence occurred, it must make express findings regarding whether the incident or incidents of domestic violence constitute a 'history of perpetrating domestic violence' under AS 25.24.150(h)."[13] In *Michele M. v. Richard R.*, for example, we remanded for further findings where the superior court alluded to a parent's "domestic violence problems" in its findings of fact and conclusions of law but never specifically determined whether the parent had "a history of perpetrating domestic violence" under the statute.[14] In *Williams v. Barbee*, we held that more specific findings were necessary where the superior court described one incident of domestic violence as a "big deal" but never determined whether it resulted in "serious physical injury" under AS 25.24.150(h).[15] And in *Parks v. Parks*, we concluded that where there was testimony at trial regarding a parent's alleged violation of a long-term protective order — a "crime involving domestic

---

[13] *Williams v. Barbee*, 243 P.3d 995, 1004 (Alaska 2010).

[14] 177 P.3d 830, 835-38 (Alaska 2008).

[15] 243 P.3d at 1004, 1007.

violence" under the relevant statute[16] — it was error for the trial court not to make a finding as to whether the alleged violation occurred.[17]

Here the superior court appears to have specifically avoided determining whether James "engaged in more than one incident of domestic violence" under AS 25.24.150(h). Instead the superior court focused on whether James's abuse of Faye was "continuous," an issue not relevant to the statutory definition of a "history of perpetrating domestic violence."[18] This improper focus prevents us from evaluating the court's ultimate conclusion that James lacked a "history of perpetrating domestic violence." Accordingly, we remand so the superior court can make specific findings as to whether James committed more than one act of domestic violence.

In addition to findings regarding the alleged acts of physical abuse against Faye, the superior court may also need to consider whether James violated the no-contact provision of the long-term protective order by hiring a private investigator to conduct surveillance of Faye. At trial Faye testified that a private investigator hired by James came to three different locations where she was present, purportedly to administer court-ordered drug tests. James admitted that he hired the private agent to perform drug testing but denied retaining him for other surveillance activities.

The protective order issued in 2011 prohibited James from "telephon[ing], contact[ing], or communicat[ing] in any way, directly or indirectly, with [Faye]" except "by email to discuss matters relating to [Hannah]," "through an attorney," or "through a notebook that travels with [Hannah]." But the superior court made no finding as to

---

[16]     *See* AS 18.66.990(3)(G) (defining the "violat[ion] of a protective order under AS 11.56.740(a)(1)" as a "crime involving domestic violence").

[17]     214 P.3d 295, 300-01 (Alaska 2009).

[18]     *See* AS 25.24.150(h).

whether James violated this no-contact provision.[19]  The court should address this issue on remand, if necessary to determine whether James committed more than one incident of domestic violence.

> **B.    The Superior Court Should Consider Evidence Of James's Alleged Acquisition Of Faye's Digital Media, If Relevant To Its Consideration Of Whether James Has "A History Of Perpetrating Domestic Violence."**

Faye claims that James committed "[a]nother set of acts involving domestic violence" by using his cell phone to access "every email sent to and from [Faye's] email accounts and every text message sent to and from [Faye's] cell phone" during a period of "two to three years."

The evidence regarding this claim is somewhat sparse.  Faye testified at trial that James had access to her email accounts on his phone; that James appeared to know about her email exchanges with her attorney; and that James had accessed nude photographs she sent to a significant other.  James testified that while he and Faye were a couple, Faye would sometimes access her email on his phone.  And although James did not dispute that the police found photographs of Faye on his phone, including nude photographs, he testified that "the majority of those photos were ones that [Faye], by her own accord, e-mailed or texted [to him]."

The superior court made no factual findings as to whether James's access to Faye's digital media constituted a "crime involving domestic violence."[20]  And in light

---

[19]     The superior court did note that the "[criminal] charge that [James] violated a protective order was . . . dismissed."

[20]     For purposes of AS 25.24.150(g)'s domestic violence presumption, "domestic violence" means a "crime involving domestic violence" as defined under AS 18.66.990(3).  *See* AS 25.90.010 ("In this title, 'domestic violence' and 'crime involving domestic violence' have the meanings given in AS 18.66.990.").

of Faye's cursory treatment of this issue in her opening brief, it is insufficiently developed for our review.[21] On remand, however, the superior court should consider the parties' testimony about Faye's digital media if necessary to determine whether James had "a history of perpetrating domestic violence."

## C. The Superior Court Did Not Commit Clear Error In Finding That James Never Physically Or Sexually Abused His Significant Other's Son.

Following the parties' separation, James was indicted on charges that he sexually and physically abused his significant other's four-year-old son. After two criminal trials, all of the charges resulted in either not-guilty verdicts or dismissals. In its factual findings regarding the custody dispute, the superior court noted that "[Faye] was very concerned that the criminal charges against [James] were never fully resolved. [Faye] did not, however, offer any evidence showing that [James] abused [his significant other's] son, and [James] adamantly denied having abused any child." The court ultimately found "no credible evidence" that James ever committed child abuse.

Faye does not expressly argue that the superior court erred in reaching this conclusion. But in her statement of the case, Faye describes the criminal proceedings against James and contends in a footnote that "[e]ven though the majority of charges were never resolved on the merits, there was significant evidence against [James]. [James] admitted the four year old received very serious injuries while in his care." But besides James's own testimony during cross-examination, there was no evidence presented at trial regarding these allegations. Assuming that Faye properly raised this

---

[21]     *See Burts v. Burts*, 266 P.3d 337, 344 (Alaska 2011) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991)) (internal quotation marks omitted)).

issue, it was not clearly erroneous for the superior court to find that James committed no act of domestic violence against the four-year-old boy.

> **D.** **The Superior Court Should Consider James's Alleged Domestic Violence Against His Ex-Wife, If Relevant To Its Consideration Of Whether James Has "A History Of Perpetrating Domestic Violence."**

Faye contends that James committed domestic violence against his ex-wife, and she argues that the court ignored evidence of this abuse. At trial James denied these allegations during cross-examination, and Faye's attorney sought to call James's ex-wife as a rebuttal witness to impeach James's testimony. The superior court ruled that the ex-wife should have been listed as a witness because Faye's counsel knew before trial about her allegations of domestic violence and should have assumed that James might deny such claims. Although the superior court described the relevant testimony in its findings of fact and conclusions of law, it issued no specific finding as to whether the alleged domestic violence occurred.[22]

On appeal Faye argues that the superior court improperly discounted James's alleged domestic violence against his ex-wife because it occurred eight years prior. Faye also takes issue with the court's exclusion of the ex-wife's testimony. But Faye raises these arguments only in her reply brief; her opening brief does not mention James's ex-wife except in the statement of the case, which briefly describes Faye's attempt to call the ex-wife as a rebuttal witness and the court's subsequent ruling.

---

[22] In relevant part, the superior court noted that "[Faye] had evidence that [James] had abused his first wife. [James] admitted that his ex-wife had claimed that he abused her, but he denied it had ever occurred (the marriage was from October 2005 to April 2006). [James] said the allegations of domestic violence followed a Coast Guard investigation of his ex-wife for adultery."

Under this court's "well-established rule . . . issues not argued in opening appellate briefs are waived."[23]  Accordingly, Faye has waived any argument that the superior court improperly excluded the ex-wife's rebuttal testimony.  But on remand, the superior court should consider any other evidence that James perpetrated domestic violence against his ex-wife in determining whether James has "a history of perpetrating domestic violence."

## V.    CONCLUSION

For the reasons detailed above, we REMAND this matter to the superior court for additional findings as to whether James engaged in more than one act of domestic violence.[24]  The court may modify its custody order as required by its findings; we do not retain jurisdiction.

---

[23]    *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010); *see also Hitt v. J. B. Coghill, Inc.*, 641 P.2d 211, 213 n.4 (Alaska 1982) ("Appellant set forth other grounds for reversal in her statement of points on appeal, one of which she argued in her reply brief, but argued none of them in her opening brief.  Accordingly, these points are waived.").

[24]    In light of our conclusion that further findings are necessary to determine whether James has a "history of perpetrating domestic violence" under AS 25.24.150(h), we do not reach Faye's request that *this* court require James to "participate in and successfully complete a state approved batterer's intervention program as described in AS 18.66.990(4)."  Nor do we reach what James appears to put forth as an alternative ground for affirming the superior court's decision:  that he has rebutted the domestic violence presumption.