*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TERRACE L. SOLOMON, | ) | |
| | ) | Supreme Court No. S-16696 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-04521 CI |
| v. | ) | |
| | ) | O P I N I O N |
| WENDY D. SOLOMON, | ) | |
| n/k/a WENDY D. BARNES, | ) | No. 7249 – June 8, 2018 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellant. Notice of nonparticipation filed by David S. Houston, Houston & Houston, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I.     INTRODUCTION

The superior court issued a decree divorcing Terrace L. Solomon and Wendy D. Barnes (formerly Solomon) and reserving custody of the parties' children to be decided at a later trial. Before the custody trial could be held, Terrace was arrested and held in a United States Army prison outside Alaska. The superior court repeatedly

continued the custody trial to allow Terrace's counsel to get in contact with Terrace and arrange for his telephonic appearance at trial. But after about a year had passed, the court refused to further continue the matter. A short custody trial was held; Terrace was absent but represented by counsel. The court awarded sole legal custody and sole physical custody to Wendy. The court determined, among other things, that Terrace had a history of perpetrating domestic violence, triggering a presumption against awarding him custody.[1]

On appeal Terrace claims the superior court abused its discretion when it refused to further continue the custody trial. Terrace also claims the court erred in concluding he had a history of domestic violence. He contends that the record was inadequate to support this conclusion and that the court did not make the requisite findings to support it. We agree the superior court's domestic violence findings are insufficient and thus vacate the court's determination concerning the domestic violence presumption. We otherwise affirm the superior court's judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Background

Terrace and Wendy married in 1999 and had four children during the marriage. They separated in December 2014, and Wendy has had custody of the children since that time. In January 2015 Wendy filed for divorce.

The superior court bifurcated the divorce proceeding. It held a one-day trial on property and child support[2] issues on October 15, 2015, and the following day it

---

[1]    AS 25.24.150(g).

[2]    The superior court addressed child support at Wendy's request. Since the parties' separation, Terrace had voluntarily paid child support to Wendy and had also voluntarily paid rent for the property where Wendy and the children resided. But Wendy
(continued...)

issued an order resolving these issues and decreeing the parties divorced. The court scheduled a half-day trial on child custody and a related domestic violence petition for January 14, 2016.

### B. Terrace's Arrest And The Continuance Of The Custody Trial

The custody trial was not held as planned on January 14, 2016, because Terrace — then a soldier in the United States Army — was arrested and imprisoned by military authorities in late October 2015. The superior court vacated the trial date and instead held a trial setting conference on January 28.

At the January 28 conference, Terrace's attorney represented that he did not know anything about Terrace's status except that Terrace was "in custody." Wendy's attorney had more information. He said that Terrace was being kept in a military prison outside Alaska and that Terrace's criminal defense attorney was "working on a potential deal that w[ould] leave him incarcerated for approximately three years." With the consent of both parties, the superior court continued the trial setting conference to March 23.

When the parties returned on March 23, Terrace's attorney explained that he had "tried to find out how long [Terrace was] going to be incarcerated" but that he had not been successful: "[N]obody knows because he's still pretrial." When asked by the court how he would like to proceed, he replied, "I guess I would like to just see if we could kick the can down the road some more . . . till we see how things shake out down there." With the consent of Wendy's attorney, the court again continued the matter.

---

**2** (...continued)
requested a child support order so Terrace's obligations would be clear and so she could "seek enforcement" if necessary.

Additional trial setting conferences were held on July 20, August 24, and September 7. At each of these conferences, Terrace's attorney indicated that he had not been in contact with Terrace. He stated, however, that he had spoken with Terrace's mother and had tried to reach Terrace's fiancée. Moreover, at the August 24 conference, he said he had learned that Terrace had been convicted in a court-martial and sentenced to 12 years' imprisonment. The superior court advised Terrace's attorney at each of these conferences that he needed to find out from Terrace how he wanted to proceed with the case. The court moreover expressed concern about "needless[]" hearings and the resulting attorneys' fees.

A final trial setting conference was held on September 28. Terrace's attorney indicated at that time that he had been in contact with Terrace, who was imprisoned at Fort Leavenworth, Kansas. Terrace's attorney requested that the court schedule a trial on custody "sometime in the next couple of months." Wendy's attorney agreed, and the court set a pretrial conference for November 2 and a trial for November 18.

At the November 2 pretrial conference, Terrace's attorney stated that he "finally [had] a half-decent pipeline to talk to" Terrace and that he had spoken with Terrace again since the September 28 hearing. He explained, though, that his phone conversations with Terrace had to be approved 72 hours in advance by the authorities at Fort Leavenworth.

The superior court suggested that the court and the parties plan to "go forward" with the November 18 trial regardless of whether Terrace would be able to participate. Terrace's and Wendy's attorneys both consented to this plan. Terrace's attorney "warn[ed] the court," however, that Terrace was "talking about wanting to delay the trial date." The court responded that it would not further continue the trial "[a]bsent good cause." In particular, the court explained: "The fact that the phone contacts back

to [Fort] Leavenworth . . . don't go through for whatever reason, I likely won't consider that good cause. These are all things for you to iron out between now and then, but the case needs to go forward."

## C. The Custody Trial

Terrace did not appear at the November 18, 2016 custody trial. His attorney said that the officials at Fort Leavenworth had "refused" to allow him to appear telephonically.[3] The attorney explained:

> [I]t turns out to be a really big deal to get . . . an inmate on the phone. You have to give them a three days heads up . . . [.] I mean we've been after this for weeks but then finally earlier in the week . . . the Specialist I've been dealing with in the command judge advocate's office in the disciplinary barracks said that he'd see what he could do quote unquote for Friday[, November 18]. Then yesterday he came back and unequivocally said we don't do Fridays. But we do Monday through Thursdays.

Terrace's attorney requested "a delay until [Terrace] can be on the phone which evidently is a Monday through Thursday."

Wendy's attorney noted that since January 2016 the court had repeatedly continued the case "because of [Terrace's] situation" and that the court had been "real clear about where things stood" at the November 2 hearing. He recommended the court "move forward" with the trial.

The superior court agreed with Wendy's attorney and denied the request to further continue the trial:

> [For] quite some time now this case . . . has been sort of kick[ed] down the road[,] always trying to accommodate [Terrace's] court-martial issues and timing and then . . .

---

[3] Terrace's attorney had tried (and failed) to bring this to the court's attention the day before the trial.

issues with getting him on the phone from Leavenworth[.] [A]nd at the last pre-trial conference November 2, . . . we address[ed] this and said the case would go forward today absent good cause and I'm not finding [there] to be good cause[.] [L]et me explain why. The situation doesn't sound like it's going to get much better. . . . [Terrace] certainly is entitled to appear telephonically but [Wendy] is entitled to have her case tried. [A]nd if there are . . . procedural issues with . . . Leavenworth, I have zero proof in front of me[:] letters, [a] motion to continue, letters or emails to and from Leavenworth as to efforts made or problems there. . . . [S]o I'm finding it not to be good cause so we will go forward.

In response to the court's ruling, Terrace's attorney stated: "[W]e don't have any email communication [with Fort Leavenworth]. We kept getting bounced around from one office to the other . . . ." The court replied: "My concern is what . . . [was] not presented to me by way of what was done to get your client on the line . . . ." Terrace's attorney declined the court's invitation to further make a record.

Wendy was the only witness at the custody trial. She testified about her involvement in the children's lives and Terrace's purportedly minimal involvement. She also testified about various violent and criminal acts that Terrace had allegedly committed. According to Wendy, Terrace had broken down the door to their son's bedroom while the boy was inside, "punched . . . holes in the walls" of their home, physically attacked her in the presence of their children (possibly on more than one occasion), and woken up and punched her "in the middle of night" due to his "extreme PTSD." Terrace had also allegedly vandalized her car by stealing her car battery. Wendy further testified about Terrace's possible violations of a civil no-contact order in the divorce case and a domestic violence protective order in a related domestic violence case. Terrace allegedly had entered the parties' home without Wendy's permission,

called Wendy on the telephone, and sent Wendy menacing emails, in possible violation of one or both of the orders.[4]

The superior court asked Wendy to explain Terrace's court-martial convictions. Wendy said she did not "remember all the exact details." But she testified that some of the charges in that case had involved Terrace's physical abuse of her and the parties' children.

The parties agreed Wendy should receive primary physical custody of the children. Moreover, Terrace's counsel did not oppose Wendy's request that Terrace have contact with the children only via letters screened by Wendy. Thus, the primary issue for the court was legal custody. The court made findings on the best interests of the children and determined that the various statutory factors weighed against granting custody to Terrace.[5] For example, the court found that "the children [were] being in all respects appropriately and fully cared for and provided for by" Wendy but that Terrace was not "in a place where he c[ould] provide anything" to the children and that even when he was available to his children, "his emotions [and] his problems were getting the better of him."

The court also made findings on Terrace's alleged domestic violence:

> I am finding that there's a history of domestic violence of two or more non-serious events[.] [Wendy] touched on really quite a few and I won't articulate each one but she certainly went far beyond [the] mandatory minimum threshold of two . . . separate events . . . . I don't know what the [court-martial] charges are[.] [W]e just have [Wendy's] statements [that domestic violence is] what he's there for[.] I'm

---

**4** We note that violation of a civil no-contact order does not in itself constitute "domestic violence" as that term is defined by statute. *Limeres v. Limeres*, 320 P.3d 291, 299 (Alaska 2014).

**5** *See* AS 25.24.150(c).

> presuming it's true but frankly I don't have to reach that issue . . . because I'm finding independent of that [court-martial] conviction that he has a history of [domestic violence] . . . .

The court concluded that Terrace's history of perpetrating domestic violence precluded him from having custody of the children: "[T]he law is quite clear. [Terrace] [c]an't have any custody, legal, primary, sole, joint, shared until he has completed the [domestic violence] course required by [s]tatute." The court awarded sole physical custody and sole legal custody to Wendy and adopted Wendy's proposal that Terrace have contact with the children only via screened letters.

## III. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion In Denying Terrace's Final Motion To Continue The Custody Trial.

Terrace claims the superior court erred when, on the day of the custody trial, the court denied his motion to further continue the trial. We review the superior court's denial of a continuance for abuse of discretion.[6] As a general matter, refusal to grant a continuance constitutes an abuse of discretion if it "seriously prejudice[s]" a party or deprives him of a "substantial right."[7] But a party seeking a continuance bears the burden of "show[ing] that he acted with due diligence upon the grounds for which continuance is sought."[8] Accordingly, even if the denial of a continuance would result

---

[6]     *Shooshanian v. Dire*, 237 P.3d 618, 622 (Alaska 2010).

[7]     *Id.* at 623 (quoting *Siggelkow v. Siggelkow*, 643 P.2d 985, 986-87 (Alaska 1982)). Terrace does not argue that he was deprived of a substantial right but instead focuses exclusively on prejudice. We accordingly do not consider whether the denial of a continuance deprived Terrace of a substantial right.

[8]     *Azimi v. Johns*, 254 P.3d 1054, 1061 (Alaska 2011) (quoting *Sparks v. Gustafson*, 750 P.2d 338, 341 (Alaska 1988)).

in prejudice, a continuance is not warranted if the prejudice is the product of the movant's own "lack of diligence."[9]

The superior court did not abuse its discretion in denying Terrace's final motion for a continuance because Terrace failed to demonstrate that he or his attorney acted diligently in securing his appearance at the custody trial. Terrace's attorney did not indicate at the January 28 or March 23, 2016 trial setting conferences whether he had been in contact with Terrace. And at the July 20, August 24, and September 7 conferences, he expressly acknowledged that he had *not* been in contact with Terrace — despite the court's repeated instructions that he do so. Terrace's attorney made no significant representations as to the extent of his efforts to reach Terrace during this time or the obstacles posed by Terrace's imprisonment. He briefly stated that he had contacted Terrace's mother and attempted to contact Terrace's fiancée, but he did not elaborate, and he did not indicate whether he had contacted or made any efforts to contact Terrace's criminal defense attorney. Moreover, there is nothing in the record about *Terrace's* attempts to reach his attorney.

Terrace's attorney finally managed to contact Terrace before the final trial setting conference on September 28, and the superior court accordingly scheduled a date for the custody trial. At the pretrial conference on November 2, the court warned Terrace's attorney that it was unlikely to further continue the trial and specifically admonished him about the need to "iron out" any communication issues with Fort Leavenworth. Despite this warning, Terrace's attorney, in attempting to secure Terrace's appearance at trial, relied solely on an unnamed Army specialist's oral representation that "he'd see what he could do." The superior court implicitly found that this reliance was

_____

[9]     *Siggelkow*, 643 P.2d at 988.

unreasonable, noting the failure of Terrace's attorney to proffer any "letters or emails to and from Leavenworth" regarding efforts made for Terrace to attend trial.

Given the failure of Terrace's attorney to explain why it took so long for him to get in contact with Terrace, and given the attorney's minimal efforts to secure Terrace's appearance at the custody trial, the superior court did not err in concluding that his showing of due diligence was inadequate to warrant a further continuance.

In arguing to the contrary, Terrace relies on *Johnson v. Schaub*[10] and *Wagner v. Wagner*,[11] cases in which we reversed denials of continuances. But these cases do not help Terrace. In *Johnson* "the record d[id] not indicate any abuse of trial process" by the parties requesting the continuance.[12] In the present case, by contrast, Terrace's counsel repeatedly requested — and was granted — continuances despite the lack of any representations or evidence that he was making a good faith effort to get in touch with his client, and he made his final continuance request on the day of trial, after Wendy and her counsel had presumably invested time and other resources preparing. Moreover, in *Johnson*, unlike the present case, the plaintiff did not oppose the defendants' motion for a continuance.[13]

*Wagner* is also distinguishable. In that case the superior court denied a party's motion for a continuance without addressing his argument that his job duties precluded his appearance.[14] But in the present case, the superior court addressed

---

[10]    867 P.2d 812 (Alaska 1994).

[11]    299 P.3d 170 (Alaska 2013).

[12]    *Johnson*, 867 P.2d at 816.

[13]    *Id.* at 814, 816.

[14]    *Wagner*, 299 P.3d at 175.

Terrace's attorney's explanation for why Terrace was unable to appear and rejected it, finding there was "zero proof" that he had made diligent efforts to secure Terrace's appearance.

Terrace further argues that the superior court abused its discretion in denying his motion because a continuance would not have prejudiced Wendy. He notes that before the day of the trial, Wendy had not opposed continuing the trial. And he also points out that Wendy already had interim custody of the children and was protected by a civil no-contact order and a domestic violence protective order. This argument lacks merit. A party can reasonably consent to a continuance at a trial setting conference but be unwilling to consent to a continuance on the day of trial. In the latter situation, counsel has spent time preparing for trial, and the witnesses (in this case, Wendy) have arranged their schedules to enable their participation.[15] And even if Wendy was in a secure position — with interim custody of the children and court orders in place that protected her and the children — the superior court and Wendy both had an interest in expeditiously resolving the custody case, which had dragged on for over a year after the end of the property and child support trial.[16] The superior court did not abuse its discretion in denying Terrace's motion to continue.

### B. The Superior Court Made Insufficient Findings To Support Its Conclusion That Terrace Has A History Of Perpetrating Domestic Violence.

Terrace next argues that the superior court erred when it concluded he has

---

[15]     *See United States v. Sinclair*, 770 F.3d 1148, 1154 (7th Cir. 2014) ("[L]ate-breaking continuances can be especially costly.").

[16]     *See Shooshanian v. Dire*, 237 P.3d 618, 623 (Alaska 2010) (noting "the necessity for orderly, prompt and effective disposition of litigation and the loss and hardship to the parties [and] witnesses" caused by delay (alteration in original) (quoting *Siggelkow v. Siggelkow*, 643 P.2d 985, 987 (Alaska 1982))).

a history of perpetrating domestic violence. This conclusion triggered a rebuttable presumption that Terrace should not have custody of the parties' children.[17] Terrace does not dispute that Wendy's testimony, if properly credited, was sufficient to establish that he has a history of perpetrating domestic violence. But he argues that the record was inadequate to allow the court to "meaningfully assess [the] credibility" of Wendy's domestic violence testimony. And he complains that the court "did not . . . make findings as to any particular incident or incidents" of domestic violence.

"A parent has a history of perpetrating domestic violence" if the superior court finds that the parent "caused serious physical injury" during a single incident of domestic violence or "engaged in more than one incident of domestic violence."[18] In reviewing the superior court's determination that a parent has a history of perpetrating domestic violence, we accept the court's factual findings unless they are clearly erroneous.[19] A finding is clearly erroneous if "a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake."[20]

Whether the superior court's findings are sufficient to support a determination that a parent has a history of perpetrating domestic violence is a legal question.[21] In deciding legal questions, we rely on our independent judgment and

---

[17]    AS 25.24.150(g)-(h).

[18]    AS 25.24.150(h); *see also* AS 18.66.990(3) (defining "domestic violence"); AS 25.90.010 (stating that the term "domestic violence," as used in the marital and domestic relations statutes, has the meaning defined in AS 18.66.990).

[19]    *Faye H. v. James B.*, 348 P.3d 876, 878 (Alaska 2015).

[20]    *Id.* (quoting *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014)).

[21]    *Id.*

"adopt[] the rule of law most persuasive in light of precedent, reason, and policy."[22]

### 1. The record was sufficient to allow the superior court to meaningfully assess Wendy's credibility.

We reject Terrace's argument that the trial record was insufficient to permit the superior court to "meaningfully assess" the credibility of Wendy's claims of domestic violence. Terrace contends that because he was not present at the custody trial, and because Wendy was the only witness, the court lacked a basis on which to assess Wendy's credibility. But the superior court heard live testimony from Wendy and thus was able to observe her demeanor and vocal inflections.[23] And the custody trial was not an ex parte proceeding: Terrace's attorney had an opportunity to cross-examine Wendy and present evidence in Terrace's favor, and he did in fact cross-examine Wendy and attempt to impeach her testimony.[24] The superior court thus had an adequate basis on which to assess Wendy's credibility.

Terrace contends that there are grounds in the record to doubt Wendy's credibility as to the alleged incidents of domestic violence. In particular Terrace points out that Wendy sent an email to him in July 2015 conceding that he had not committed

---

[22]     *Dodge v. Sturdevant*, 335 P.3d 510, 511 (Alaska 2014).

[23]     *Cf. Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1136-37 (Alaska 2001) (explaining the importance of observing in-person testimony in assessing a witness's credibility); *Curry v. Tucker*, 616 P.2d 8, 12 n.3 (Alaska 1980) ("Determinations of credibility are for the trier of fact . . . because, unlike the reviewing court, the trier of fact saw the witnesses testify, heard the inflection of their voices and observed their relative candor in answering questions.").

[24]     *See L.C.H. v. T.S.*, 28 P.3d 915, 922 (Alaska 2001) (noting that "cross-examination and impeachment" are "the traditional tests" for determining a witness's "reliability and credibility").

any "criminal offenses" and characterizing him as a mere verbal "bully." He also points out that Wendy had asked the Army to drop the court-martial against Terrace.

In making this argument, Terrace is effectively asking us to assess Wendy's credibility on the cold record and override the superior court's decision to credit her testimony. But "[i]t is . . . the function of the superior court" — not the function of this court — "to judge witness credibility and weigh conflicting evidence."[25] In any case, Wendy explained in her testimony that she sent the email and made the request to drop the court-martial because at that time she was trying to reconcile with Terrace. Her attitude towards Terrace subsequently changed, however, when she realized that he was not making any progress with his anger problems or substance abuse. Wendy's explanation was not inherently incredible and, if believed, served to undermine the supposed impeaching force of her conduct. The superior court did not clearly err in crediting Wendy's testimony.

### 2. The superior court's domestic violence findings are not sufficient to permit meaningful appellate review.

Although we reject Terrace's argument that the record was insufficient to support the superior court's domestic violence determination, we agree with his alternate argument that the court made inadequate findings. As a general matter, "the superior court must . . . make its findings with sufficient specificity that we may review both the grounds for its decision and its application of the law to the facts."[26] Specific findings are especially crucial when the superior court makes a determination as to a parent's

---

[25] *Price v. Eastham*, 128 P.3d 725, 731 (Alaska 2006).

[26] *Id.*

history of perpetrating domestic violence.[27] This determination is a critical one since it will often control the court's ruling on custody and visitation.[28]

The superior court's findings in this case are inadequate because they do not permit us to review the court's domestic violence determination. Wendy described some violent and apparently criminal incidents involving Terrace, but the court made no findings concerning these incidents except to remark that they "went far beyond [the] mandatory minimum threshold of two . . . separate [domestic violence] events." The court did not make findings as to what actually happened during these incidents, state which of these incidents involved domestic violence crimes, or indicate what crimes were committed.[29]

These deficiencies are problematic because even if the court credited Wendy's testimony in full, as it apparently did, the court still needed to exercise its judgment in drawing inferences from the testimony. For any given incident that Wendy described, the court needed to determine whether Wendy's testimony established the

---

[27] *See, e.g.*, *Bruce H. v. Jennifer L.*, 407 P.3d 432, 439 n.34 (Alaska 2017) ("We generally require detailed domestic violence findings when a party alleges that the domestic violence presumption should apply."); *Sarah D. v. John D.*, 352 P.3d 419, 429 (Alaska 2015) ("The superior court must make detailed findings on alleged incidents of domestic violence."); *Faye H. v. James B.*, 348 P.3d 876, 879-80 (Alaska 2015) ("[W]here a superior court finds that domestic violence occurred, it must make express findings regarding whether the incident or incidents of domestic violence constitute a 'history of perpetrating domestic violence' under AS 25.24.150(h)." (quoting *Williams v. Barbee*, 243 P.3d 995, 1004 (Alaska 2010))).

[28] *See* AS 25.24.150 (g)-(h), (j).

[29] *See* AS 18.66.990(3) (listing crimes involving domestic violence); *cf. Parks v. Parks*, 214 P.3d 295, 300 (Alaska 2009) (reversing superior court's determination that husband's act of throwing water at wife "was not 'sufficient misconduct' " to be domestic violence, and requiring court on remand to determine whether act satisfied elements of attempted fourth-degree assault, a crime of domestic violence).

elements of a domestic violence crime.[30] There is nothing in the record demonstrating that the superior court did so and thus nothing that permits us to review the court's inferences.

Although we could perhaps independently review the record and "derive bases on which the [superior] court could . . . permissibly" have found that at least two crimes of domestic violence had been committed, it is not the function of an appellate court to do so.[31] The superior court, having heard live testimony, is in a much better position than we are to determine the proper inferences to be drawn from the evidence in this case.[32] We therefore must remand for further consideration and findings by the superior court unless its failure to make adequate findings was harmless.[33]

At first glance the deficiency in the findings appears harmless. The superior court's custody and visitation determinations were based in large part on Terrace's concession that Wendy should have physical custody and his failure to dispute Wendy's proposal that he contact the children only through mail screened by Wendy. And the court's custody and visitation determinations are otherwise strongly supported by the record: It was undisputed that Terrace had just been sentenced to 12 years in prison, and as the court explained, the evidence showed that Terrace's "emotions" and

---

[30] *See Limeres v. Limeres*, 320 P.3d 291, 299 (Alaska 2014) (faulting the superior court for (1) failing to make findings on whether a parent possessed the mental state needed to commit the crime of violating a protective order, a crime of domestic violence, and (2) failing to make findings on whether the parent's conduct constituted "harassment, stalking, or assault that could amount to a crime of domestic violence").

[31] *Urban Dev. Co. v. Dekreon*, 526 P.2d 325, 328 (Alaska 1974).

[32] *Asher v. Alkan Shelter, LLC*, 212 P.3d 772, 780 (Alaska 2009), *overruled on other grounds by Shaffer v. Bellows*, 260 P.3d 1064 (Alaska 2011).

[33] *See* Alaska R. Civ. P. 61 ("The court . . . must disregard any error or defect . . . which does not affect the substantial rights of the parties.").

"problems" precluded him from meeting the children's needs. We can thus affirm the superior court's custody and visitation determinations even though the court's findings are insufficient to allow us to review its domestic violence determination.

But a closer look reveals that the superior court's domestic violence determination affected the judgment in one material way. Had the court come out differently on the domestic violence issue, it would not have required Terrace to comply "with the mandates of AS 25.24.150(h)." This statute imposes burdens that will make it more difficult for Terrace to regain custody of his children in the future.[34] Thus, the absence of adequate findings to permit us to review the domestic violence determination is not harmless error and requires us to vacate the superior court's determination and remand for additional findings regarding domestic violence.

IV.    CONCLUSION

We VACATE the superior court's determination that Terrace has a history of perpetrating domestic violence and REMAND the matter for the court to reconsider this determination. In reconsidering the domestic violence determination, the superior court should make findings sufficient to permit adequate appellate review. We AFFIRM the superior court's judgment in all other respects. We do not retain jurisdiction.

---

[34]    AS 25.24.150(h) provides that the presumption against a perpetrator of domestic violence having custody of children "may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent."