NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BARTON D., | ) | |
| | ) | Supreme Court No. S-18406 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-22-00359 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CATALINA D., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1962 – May 3, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Nathan T. Henshaw, Henshaw Law, Anchorage, for Appellant. Notice of nonparticipation filed by Dorothea G. Aguero, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.    INTRODUCTION

A mother petitioned for a long-term domestic violence protective order against a father, alleging a number of incidents of domestic violence. Following an evidentiary hearing the superior court found that one incident was proven, and it issued the requested order. The father appeals. He argues that the court erred by crediting the mother's testimony and by including provisions in the order that awarded the mother

---

\*       Entered under Alaska Appellate Rule 214.

temporary custody of their two children and required him to take a parenting class. He also asserts that his due process rights were violated by a lack of adequate notice and opportunity to present his case. Seeing no error, we affirm the long-term domestic violence protective order.

## II.    FACTS AND PROCEEDINGS

Barton (Bart) and Catalina D. were married and have two young children. Catalina filed a petition for a domestic violence protective order in February 2022. The court held a hearing in March and heard testimony about a number of alleged incidents of domestic violence. The court then granted the long-term domestic violence protective order, finding that one incident of domestic violence occurred in April 2021 but that Catalina's other allegations had not been proven.

Catalina testified that on April 18, 2021, she and Bart went to celebrate their anniversary with a take-out dinner at a new property where they were building a house. Once there they began arguing, renewing a heated discussion of finances from earlier in the day. The parties dispute exactly what happened during the argument, but the court found that Bart "was really upset" with Catalina, "yelled at her," "thr[ew] a champagne bottle" (though not at her), was "pacing back and forth," and would not let her return to their truck. Eventually Catalina ran to the truck and locked herself inside. Bart then started shaking the vehicle, and when Catalina let him in he continued to yell and pound his fists on the dashboard until he got out and started walking down the road alone. As Catalina drove away she stopped to talk to him on the side of the road, and they argued again.

Catalina spent the weekend at her mother's house with the children. She testified that she "thought that he might kill [her]" and was "really scared" that night and that "it was the first time that [she] realized [Bart] might actually really do something to hurt [her]." Bart did not dispute her testimony about the incident, and the court accepted Catalina's description of it as credible.

At the conclusion of the evidentiary hearing the court found that Bart "committed or attempted to commit . . . assault [or] reckless endangerment" based on the April 2021 incident and granted the long-term domestic violence protective order. The court made a temporary custody decision, awarding physical custody of the children to Catalina but granting Bart visitation from 3:00 p.m. to 7:00 p.m. on Fridays and 10:00 a.m. to 6:00 p.m. on Saturdays and Sundays. The court also ordered Bart to take a parenting class. The court maintained a scheduled custody hearing that was two months away, on April 21, 2022, intending to use it to "see how well [Bart is] doing with the kids, and . . . readdress overnights at that time."

Bart filed a motion for reconsideration, which the court denied. Bart now appeals the long-term domestic violence protective order, including its provisions for interim custody and a parenting class, and asserts violations of his due process rights. Catalina is not participating in the appeal.

## III. STANDARD OF REVIEW

"We review the superior court's protective order for abuse of discretion."[1] However, "[w]hether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[2] "A finding is clearly erroneous if 'a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake.' "[3] "Whether there are sufficient findings for informed appellate review is a question of law,"[4] which we review de novo.[5]

---

[1]    *John E. v. Andrea E.*, 445 P.3d 649, 659 (Alaska 2019).

[2]    *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1090 (Alaska 2015) (quoting *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014)).

[3]    *Solomon v. Solomon*, 420 P.3d 1234, 1241 (Alaska 2018) (alteration in original) (quoting *Faye H. v. James B.*, 348 P.3d 876, 878 (Alaska 2015)).

[4]    *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015) (quoting *Hooper v. Hooper*, 188 P.3d 681, 685 (Alaska 2008)).

[5]    *Brown v. Knowles*, 307 P.3d 915, 923 (Alaska 2013).

The superior court has "broad discretion in child custody decisions."[6] "We will reverse the superior court's decision only when 'the record shows an abuse of discretion or if controlling factual findings are clearly erroneous.' An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[7] We also "review the superior court's visitation decisions for abuse of discretion."[8]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Granting The Long-Term Domestic Violence Protective Order.

#### 1. It was not clear error to find that Bart committed a crime of domestic violence.

Bart faults the superior court for "fail[ing] to extensively discuss the evidence in support of its findings." We have held that "the superior court must . . . make its findings with sufficient specificity that we may review both the grounds for its decision and its application of the law to the facts."[9] "[D]etailed findings on alleged incidents of domestic violence" are not only necessary for effective appellate review; they also assure us that the superior court exercised its judgment in making determinations while the evidence was "fresh in [its] mind[]."[10]

We have concluded that findings were insufficient to support a domestic violence protective order only when the court failed to make any findings specific to

---

[6] *Caroline J.*, 354 P.3d at 1089 (quoting *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005)).

[7] *Id.* at 1089-90 (first quoting *J.F.E. v. J.A.S.*, 930 P.2d 409, 411 (Alaska 1996); and then quoting *Siekawitch v. Siekawitch*, 956 P.3d 447, 449 (Alaska 1998)).

[8] *John E. v. Andrea E.*, 445 P.3d 649, 658 (Alaska 2019).

[9] *Solomon v. Solomon*, 420 P.3d 1234, 1242 (Alaska 2018) (alteration in original) (quoting *Price v. Eastham*, 128 P.3d 725, 731 (Alaska 2006)).

[10] *Sarah D. v. John D.*, 352 P.3d 419, 429 (Alaska 2015).

the facts or the parties in front of it or ignored allegations entirely.[11]  For example, in *Solomon v. Solomon* we held that a finding of domestic violence was insufficiently supported when "[t]he court did not make findings as to what actually happened during these incidents, state which of these incidents involved domestic violence crimes, or indicate what crimes were committed."[12]  Here, by contrast, the superior court clearly identified the incident it found to constitute a crime of domestic violence, made some explicit findings about what it believed happened that day, and specified that the crime committed or attempted was "assault in the fourth degree" or "recklessly causing someone fear."  The court's factual findings give us "a clear understanding of the basis of [its] decision" and thus allow for appellate review.[13]

Bart also contends that the superior court erred in finding that he committed or attempted to commit assault in the fourth degree.  Alaska Statute 18.66.990(3)(A) defines "domestic violence" and a "crime involving domestic violence" to include "the following offenses . . . or an attempt to commit the offense[:] . . . a crime against the person under AS 11.41."  Alaska Statute 11.41.230(a)(3) provides that "[a] person commits the crime of assault in the fourth degree if . . . by words or other conduct that person recklessly places another person in fear of imminent physical injury."  A person acts "recklessly" when the person is "aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or

---

[11]    *See, e.g.*, *id.* at 429-34 (remanding superior court's finding of domestic violence for more "detailed findings on alleged instances of domestic violence" when court failed to inquire into five instances of alleged domestic violence); *Jason B. v. Heather B.*, Nos. S-17258/17268, 2020 WL 2896574, at *3-4 (Alaska June 3, 2020) (vacating long-term domestic violence protective order for insufficient factual findings when court's only written or oral findings consisted of checking two boxes on standard domestic violence protective order form).

[12]    420 P.3d at 1242.

[13]    *Sarah D.*, 352 P.3d at 429 (quoting *Merrill v. Merrill*, 368 P.2d 546, 548 (Alaska 1962)); *see also* Alaska R. Civ. P. 52(a).

that the circumstance exists."[14]

Bart argues that the court was required to find not simply that Catalina was afraid, but that he actually attempted to place her in fear of physical injury. He relies on *Parks v. Parks* for the proposition that assault in the fourth degree requires a finding that the perpetrator " 'attempted' to place [the victim] in fear of imminent physical injury. It is irrelevant whether [the victim] was actually placed in fear."[15] But *Parks* discusses *attempted* assault;[16] attempt requires an "intent to commit a crime."[17] Assault in the fourth degree, on the other hand, requires only recklessness causing fear of imminent physical injury,[18] and the evidence supports the superior court's finding that the elements of this offense were met. We need not address Bart's argument that the superior court, by failing to explicitly find that he intended to cause Catalina fear, erred in finding that he attempted to commit assault in the fourth degree. Because Bart is entitled to relief only if there is no crime of domestic violence that justifies issuance

---

[14]    AS 11.81.900(a)(3).

[15]    214 P.3d 295, 300 (Alaska 2009).

[16]    *See id.* (stating that trial court incorrectly concluded that throwing water on the victim was not an act of domestic violence "in part because [the victim] did not testify that she was afraid before or after the incident" and remanding so trial court could make findings as to perpetrator's intent for attempted assault); *see also Sarah D.*, 352 P.3d at 434 ("We have held [in *Parks*] that because domestic violence encompasses an attempted assault, '[i]t is irrelevant whether [the alleged victim] was actually placed in fear.' "); *Harris v. Governale*, 311 P.3d 1052, 1058 (Alaska 2013) ("[A]n *attempted* assault occurred if the perpetrator attempted to put the victim in fear of imminent physical injury, regardless of success, and attempted assault is a domestic violence crime." emphasis in original)).

[17]    AS 11.31.100(a).

[18]    AS 11.41.230(a)(3).

of the protective order,[19] and because the court's findings support a finding of assault in the fourth degree, any error in the court's failure to find the elements of *attempted* assault is harmless.

## 2. It was not clear error to credit Catalina's testimony.

"[T]he trial court's findings regarding the credibility of the witnesses will be reversed only if clearly erroneous."[20] We recognize that trial courts are the in the best position to assess witness credibility in part because they observe individuals' "demeanor and vocal inflections" during live testimony.[21] Parties' opportunity to present conflicting testimony and cross-examine witnesses provides an additional check on witness credibility.[22]

Bart argues that the superior court "insufficiently judged the credibility of Catalina's oral testimony," citing as support her testimony that even after having been placed in "fear for her life" due to Bart's conduct, she stopped to speak with him again as she drove away from the property. The court recognized, however, that such a dynamic often appears in domestic violence situations. Rather than finding this fact discrediting, the court repeatedly "found [Catalina] credible." The court explained, "I watched her. I watched both parties testify. I think she was credible when she testified

---

[19]     *See Stephan P. v. Cecilia A.*, 464 P.3d 266, 272 (Alaska 2020) (holding that a domestic violence protective order cannot stand if the underlying findings of crimes of domestic violence are vacated or reversed).

[20]     *Soules v. Ramstack*, 95 P.3d 933, 937 (Alaska 2004).

[21]     *Solomon v. Solomon*, 420 P.3d 1234, 1241 (Alaska 2018); *see also Curry v. Tucker*, 616 P.2d 8, 12 n.3 (Alaska 1980) ("Determinations of credibility are for the trier of fact . . . because, unlike the reviewing court, the trier of fact saw the witness testify, heard the inflection of their voices and observed their relative candor in answering questions.").

[22]     *See L.C.H. v. T.S.*, 28 P.3d 915, 922 (Alaska 2001) (holding that "cross-examination and impeachment" are "the traditional tests" to determine "reliability and credibility" of witnesses).

about what had occurred [on April 18, 2021]."

A finding is clearly erroneous if "a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake."[23] Bart is "effectively asking us to assess [Catalina's] credibility on the cold record and override the superior court's decision to credit her testimony."[24] That is inconsistent with our function as a reviewing court. Nothing in the record convinces us that the superior court clearly erred by finding Catalina credible.[25]

## B. The Custody Issue Is Moot.

Bart argues that the superior court erred by failing to consider the factors listed in AS 25.24.150(c) or conduct a "best interests analysis" before awarding physical custody of the children to Catalina. But other hearings and orders on interim custody followed the hearing on the domestic violence protective order that is here on appeal, and Bart agrees that the parties have been operating under a different, shared physical custody arrangement. Bart's challenge to the earlier custody order is plainly moot.[26]

---

[23] *Solomon*, 420 P.3d at 1241 (alteration in original) (quoting *Faye H. v. James B.*, 348 P.3d 876, 878 (Alaska 2015)).

[24] *Id.*

[25] Bart argues that the court erred by relying in part on his failure to "even address or . . . even deny the incident involving the [vehicle]." But the court's findings were not clearly against the weight of the evidence presented, and a court does not err by relying on uncontroverted testimony.

[26] *See R.I. v. C.C.*, 9 P.3d 274, 278 (Alaska 2000) (holding that father's "issues pertaining to the interim custody order are moot" "[g]iven that a final award of custody has been made, [and the father] would be entitled to no relief even if he prevailed on [the interim custody issues]").

We also note, however, that Bart's challenge is meritless. Long-term domestic violence protective orders are governed by AS 18.66.100, which specifically provides

### C. The Superior Court Did Not Abuse Its Discretion By Ordering Bart To Take A Parenting Class.

Alaska Statute 18.66.100(c)(9) allows a court to award "temporary custody" and "arrange for visitation" if it determines that the petitioner and the child can be protected. The statute further provides that "if visitation is allowed, the court may order visitation under the conditions provided in AS 25.20.061."[27] Alaska Statute 25.20.061, in turn, addresses "visitation in proceedings involving domestic violence," and it specifically allows the court to "set conditions for the visitation, including . . . [that] the perpetrator shall attend and complete, to the satisfaction of the court, a program for the rehabilitation of perpetrators of domestic violence . . . *or other counseling.*"[28] And the court may impose "any other condition necessary for the safety of the child, the other parent, or other household member."[29]

---

that the court may "award temporary custody of a minor child to the petitioner and may arrange for visitation with a minor child if the safety of the child and the petitioner can be protected." AS 18.66.100(c)(9). We have recognized that "domestic violence proceedings and custody modification proceedings are distinct proceedings. [A] domestic violence hearing [is] directed at an award of temporary custody for [a time set by statute] or less based on the sole finding that domestic violence [has] occurred." *Lashbrook v. Lashbrook*, 957 P.2d 326, 329 (Alaska 1998); *see* AS 18.66.100(b)(2) (providing that most provisions of long-term domestic violence protective orders "are effective for one year unless earlier dissolved by court order"). The custody award that Bart challenges on appeal was just such a temporary custody arrangement specifically authorized by AS 18.66.100(c)(9), and the court did not err by failing to conduct the best interests analysis that AS 25.24.150 requires in other contexts. *See* AS 25.24.150(a) (requiring court to consider best interest factors if it "make[s], modif[ies], or vacate[s] an order for the custody of or visitation with the minor child" "[i]n an action for divorce or for legal separation, for placement of a child when one or both parents have died, or as part of a child-in-need-of-aid proceeding for a child in state custody under AS 47.10.").

[27] AS 18.66.100(c)(9).

[28] AS 25.20.061(3) (emphasis added).

[29] AS 25.20.061(8).

Bart argues that the superior court erred by ordering him to take a parenting class without first finding that he was a danger to the children and without hearing testimony from him about his parenting abilities. We disagree. The governing statute explicitly allows the court to impose "any . . . condition[s]" necessary for safe visitation;[30] it does not require a court to make findings in addition to those necessary for the issuance of the domestic violence protective order. And the court heard testimony supporting a conclusion that Bart occasionally disregarded the effect his conduct could have on the children. Catalina testified that on one occasion the children were "incredibly hungry," had worn the same clothes all weekend, and had not been bathed after spending the weekend with Bart; that Bart screamed at her, punched the wall, and "got into [her] face" while she was nursing the baby; that on one occasion he "slamm[ed] doors and cabinets" and "scream[ed]" at the baby when the baby would not go to sleep; and that on another occasion he yelled, punched the wall outside their daughter's bedroom, and threw things while Catalina was carrying their daughter out of the house. The court could reasonably credit this testimony, conclude that Bart would benefit from parenting instruction, and condition visitation on his attendance.

### D.     The Superior Court Did Not Violate Bart's Due Process Rights.

Due process requires a "certain level of procedural fairness,"[31] including sufficient notice of court proceedings so that parties have a reasonable opportunity to prepare[32] and a meaningful opportunity to be heard.[33] Bart argues that his due process rights were violated because he was "not given notice that interim custody was at issue and because he was not given an opportunity to be heard." These arguments are without merit. Bart was given notice of the long-term domestic violence protective order

---

[30]     *Id.*

[31]     *Nichols v. Eckert*, 504 P.2d 1359, 1364 (Alaska 1973).

[32]     *Zok v. Estate of Collins*, 84 P.3d 1005, 1008 (Alaska 2004).

[33]     *Dennis O. v. Stephanie O.*, 393 P.3d 401, 411 (Alaska 2017).

hearing and had time to prepare; in fact, the parties exchanged witness lists and exhibits beforehand, and Bart subpoenaed a potential witness. Catalina's petition gave notice of the likely issues, specifically requesting "temporary physical custody" of the children. And the governing statute, as explained above, clearly provides that one result of the hearing may be an "award [of] temporary custody of a minor child to the petitioner."[34] Bart was represented by counsel at the hearing and had the opportunity both to present testimony and to cross-examine the opposing party.

Bart relies on *Cushing v. Painter* for the proposition that he was not given notice that interim custody was at issue.[35] In *Cushing* we held that the superior court violated a parent's due process rights by entering a permanent custody order when notice of the hearing indicated it would be an interim custody hearing and the parties had only a few days to prepare.[36] Here the court awarded only temporary custody, in accordance with Catalina's request and the court's express statutory authority;[37] it also discussed with the parties, on the record, the upcoming proceedings in the parallel divorce case that would more definitively decide the custody issues. We see no deprivation of due process.[38]

## V.  CONCLUSION

The long-term domestic violence protective order is AFFIRMED.

---

[34]  AS 18.66.100(c)(9).

[35]  666 P.2d 1044 (Alaska 1983).

[36]  *Id.* at 1045-46.

[37]  *See* AS 18.66.100(c)(9).

[38]  Bart appears to argue that the superior court's exclusion of his substance abuse evaluation as "outside the scope of the proceeding" was one way in which he was denied an opportunity to be heard. But the court made no findings one way or the other about substance abuse; Bart does not demonstrate how exclusion of this evidence could have prejudiced his case.