NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

JENNIFER L., )
　　　　　　　　　　　　　　　) Supreme Court No. S-17698
　　　　　　　　Appellant, )
　　　　　　　　　　　　　　　) Superior Court Nos. 1WR-15-00001/
v. ) 1WR-17-00036 CI
　　　　　　　　　　　　　　　)
GEOFFREY G., ) MEMORANDUM OPINION
　　　　　　　　　　　　　　　) AND JUDGMENT[*]
　　　　　　　　Appellee. )
　　　　　　　　　　　　　　　) No. 1830 – May 19, 2021

Appeal from the Superior Court of the State of Alaska, First Judicial District, Wrangell, Kevin Miller, Judge pro tem.

Appearances: David C. Campbell, Campbell Law, LLC, Lake Oswego, Oregon, for Appellant. Geoffrey G., pro se, Petersburg, Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I. INTRODUCTION

The parents of three children separated in 2014 and lived in different communities following their divorce. The initial custody order awarded primary physical custody of the children to the mother, but the order was subsequently modified several times. The most significant modification occurred in 2020, when the superior court found a substantial change in circumstances and awarded primary physical custody to the father. The mother appeals.

---

[*]　　Entered under Alaska Appellate Rule 214.

We conclude that the superior court's findings regarding a substantial change in circumstances are in part clearly erroneous and are otherwise inadequate for our review. We also conclude that it was error for the superior court to fail to make detailed findings about a number of alleged incidents of domestic violence by the father when weighing the best interests factors and deciding whether there was a history of domestic violence for purposes of the statutory presumption against awarding custody to the perpetrator. We therefore vacate the 2020 custody award and remand the case for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Early Proceedings

Geoffrey G. and Jennifer L. had three children together: two sons, born in 2006 and 2009, and a daughter, born in 2012. Geoffrey and Jennifer lived together until their separation in 2014. At some point thereafter Geoffrey moved to Petersburg, while Jennifer stayed in Wrangell.

In 2015 the court entered an order awarding primary physical custody to Jennifer, finding that all the statutory best interests of the child factors[1] either favored her or were neutral. The court noted a number of instances of possible domestic violence on Geoffrey's part, citing Jennifer's testimony that he once "broke into her apartment[] and damaged her television" and another time "pushed [her] in front of the children," though the court found "no evidence that [Jennifer] suffered a 'physical injury' or was 'placed in fear of imminent physical injury.' " The court also noted the "considerable evidence that [Geoffrey] [was] verbally abusive to [Jennifer] by calling her degrading names, threatening injury to people that [Jennifer was] dating[,] as well as threatening suicide," and that in one instance, according to Jennifer, "she called search and rescue because of

---

[1] *See* AS 25.24.150(c)(1)-(9).

her concern that [Geoffrey] would follow through with his threat." The court nonetheless decided that it could not "find on the existing record that [Geoffrey] ha[d] a 'history of domestic violence.' " It did observe, however, that Geoffrey's "inability to constructively deal with the end of his relationship with [Jennifer] combined with his hostility toward[] her and his abuse of alcohol are legitimate concerns and warning signs of the potential for future violence." The court granted Geoffrey custody of the children every other week from Monday to Wednesday and ordered him to pay Jennifer child support.

In 2016 the court issued an order mostly reaffirming the 2015 order's findings and structure. On the issue of domestic violence, the court noted its earlier concerns about Geoffrey but concluded that his new relationship with a woman he was engaged to marry, as well as "the length of time between the breakup and today[,] have gone a long way toward ending [Geoffrey's] past [abusive] behaviors." The court ruled that Jennifer would continue to have primary custody of the children but Geoffrey would have custody every other weekend during the school year and longer blocks of custody during the summer.

The parties filed other custody motions in April and June 2017. Jennifer alleged that Geoffrey's domestic violence and verbal abuse had continued and asked that his visits be supervised. She described recent incidents of violence: "[Geoffrey] . . . cornered me in his mother[']s bathroom, then shoved me out after I would not have intimate relations with him, then came after me with a shovel" while threatening both her and her boyfriend. She alleged that he threw the shovel at her car while she was backing out of the driveway, denting her bumper. She also alleged that while she and her children were on her boyfriend's boat, Geoffrey circled them in his boat and threatened to ram them.

A few weeks later Jennifer filed a petition in district court for 20-day and long-term domestic violence protective orders; this was a separate case from the custody case but assigned to the same judge. The petition contained many of the same allegations as her custody modification motion, as well as allegations that Geoffrey had sexually assaulted her twice in 2015. She also presented a friend's account of seeing Geoffrey throw a plate of food at Jennifer's head at a Little League game.

The court granted Jennifer a 20-day domestic violence protective order on June 27, finding probable cause to believe that Geoffrey had committed or attempted to commit the domestic violence crimes of assault or reckless endangerment and criminal mischief. Three days later the court issued an order in the custody case, advising the parties that an evidentiary hearing was required because the court had now "been presented with information that was not presented [in earlier custody proceedings]," specifically (1) "the current domestic violence allegations that resulted in the ex parte order in [the separate domestic violence proceeding]" and (2) evidence of another domestic violence proceeding involving Geoffrey's new wife, which, although it was no longer being pursued, had resulted in a "criminal charge in Petersburg alleging that [Geoffrey] violated that protective order." The court noted "the importance of these issues" for determining the applicability of the presumption against awarding custody to a parent with a history of domestic violence;[2] the court said that it therefore "want[ed] to give [Geoffrey] the opportunity to be heard before ruling."

The evidentiary hearing took place on July 6; both parties appeared without counsel. The court asked them about the domestic violence protective order Geoffrey's

---

[2] "There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child." AS 25.24.150(g).

current wife had obtained and about text messages Jennifer had submitted to support her claims of verbal abuse. But the court did not ask either party about Jennifer's other allegations of domestic violence — the ones raised in her motion and her domestic violence petition involving the shovel, the boat, the thrown plate of food, and the sexual assaults. The court's written order concluded that the evidence did not justify a finding that Geoffrey "pose[d] a risk of harm to the children" and allowed his visitation to continue unsupervised. The court made note of the protective order obtained by Geoffrey's wife and "the pending criminal charge for violating that protective order," which it found justified Jennifer's decision to withhold visitation, as well as "the content of [Geoffrey's] text messages . . . and his inability to communicate on a level expected of an adult and parent." But the court made no mention of the 20-day protective order just obtained by Jennifer or the probable cause findings underlying it. It made no findings about her various allegations of domestic violence.

In August 2017 the court — again with the same judge presiding — held a hearing on Jennifer's petition for a long-term domestic violence order. The court found by a preponderance of the evidence that Geoffrey had committed assault or reckless endangerment and criminal mischief and that he "represent[ed] a credible threat to the physical safety of [Jennifer]." But the court did not acknowledge these findings in the ongoing custody case, even though it decided several motions in that case — including one again addressing whether Geoffrey's visits should be supervised — on the same day it signed the long-term domestic violence protective order.

Jennifer moved to modify custody again in November 2018, seeking to limit Geoffrey's visitation. She alleged, among other things, that Geoffrey had manufactured a complaint to the Office of Children's Services (OCS) about the children's safety as retaliation against her and to circumvent the custody order. OCS subsequently filed an affidavit of the children's assigned social worker. She reported

that OCS had received four reports that Jennifer's boyfriend had abused the children, three of which were "screened out and not investigated." To investigate the remaining complaint the social worker met with the children at school, finding "no signs of present danger" and that the "children appeared to be healthy." The court denied Jennifer's motion, finding that she had failed to establish a change in circumstances warranting a modification of the visitation schedule.

**B.    Current Proceedings**

In July 2019 Geoffrey moved for another change in custody, seeking primary physical custody so that the children could begin attending school in Petersburg. As support, Geoffrey alleged that Jennifer often worked nights, putting the oldest child "in charge of the younger two for 50% of the year basically"; that the children's grades had slipped in the past two years; and that Jennifer was unavailable to help the children with homework whereas he and his wife would be available to help them "every single night." He also cited OCS's 2018 investigation and repeated the allegations from the complaints OCS had investigated and rejected. This motion was denied because of procedural deficiencies, but Geoffrey filed another motion making similar claims a few months later.

In her opposition, Jennifer argued that the parties had already addressed the issues regarding their living conditions and the children's school performance. She also filed documentation of Geoffrey's child support payments, showing that he owed more than $3,000 as of November 2019. The court held an evidentiary hearing in December at which both parents were again unrepresented. Geoffrey and Jennifer both testified about the children's performance in school. Jennifer testified that she would work less or find a different job if child support became more consistent, but "until that happen[ed] . . . [she was] doing the absolute best with what [she had]." Geoffrey again referred to the OCS investigation and alleged that the children were "afraid of" Jennifer's

boyfriend; Jennifer testified that the OCS investigation had been dropped without any action against either her or her boyfriend and anyway they were no longer seeing each other.

In January 2020 the court entered a new custody order which granted primary physical custody to Geoffrey. The court first found that there was a substantial change in circumstances since the 2016 order; it then found that it was in the children's best interests to grant Geoffrey primary physical custody because the best interests of the child factors either favored him or were neutral.

As most significant to this appeal, the court found that the domestic violence factor[3] did not favor either parent. It found "no credible evidence of domestic violence" perpetrated by Jennifer or in her home. As for Geoffrey, the court noted again the short-term domestic violence protective order that his wife had obtained against him in 2017 but observed that it had been "quickly dismissed" along with the related criminal charge. Without addressing any of Jennifer's other allegations of domestic violence, the court concluded that it could not find "that [Geoffrey] has a history of perpetrating domestic violence."

Jennifer retained counsel shortly after the order was issued and moved for reconsideration. She argued that the evidence did not justify a finding of changed circumstances. But her motion focused primarily on the domestic violence issue and the applicability of the presumption against awarding custody to a parent with a history of domestic violence. She reminded the court of the incidents underlying its findings in the 2015 custody order, when the court found that whether Geoffrey had a history of domestic violence was a "very close" call. She noted the findings of domestic violence that formed the basis for the 2017 long-term domestic violence protective order. And

---

[3]     AS 25.24.150(c)(7).

she noted the court's finding in the 2020 order that Geoffrey had "actively tried to sabotage [Jennifer's] custodial rights through making unwarranted calls for 'welfare checks' and spreading false rumors," acts which she argued could themselves constitute domestic violence.

The court denied reconsideration, and Jennifer appeals.

## III. STANDARD OF REVIEW

"The superior court has broad discretion in determining custody awards 'so long as the determination is in the child's best interests.' We 'will not reverse a superior court's custody determination unless it abused its discretion or its controlling factual findings are clearly erroneous.' "[4] "The court's broad discretion extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare."[5]

"Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[6] "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[7]

---

[4] *Stephanie F. v. George C.*, 270 P.3d 737, 745 (Alaska 2012) (footnote omitted) (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)).

[5] *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016).

[6] *Faye H. v. James B.*, 348 P.3d 876, 878 (Alaska 2015) (quoting *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014)).

[7] *Id.* (quoting *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014)).

"We review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[8]

## IV.   DISCUSSION

Jennifer argues that the superior court erred by finding that a substantial change in circumstances had occurred that supported a custody modification, that the court erred by failing to develop the record on her allegations of domestic violence, that the court erred by finding that Geoffrey did not have a history of domestic violence, and that the court's rulings against her were the result of an improper bias. We agree with her in part. We conclude that the superior court's findings are not detailed enough to allow us to determine whether it abused its discretion in finding a substantial change in circumstances. Although this determination alone is sufficient reason for us to vacate the 2020 custody order,[9] we also find it important to address the court's cursory findings on domestic violence. We agree with Jennifer that the superior court failed to develop the record or make adequate findings on this important issue. Finally, we reject Jennifer's claim that the court was biased against her.

### A.   The Superior Court's Findings On Whether There Was A Substantial Change In Circumstances Are Inadequate For Our Review.

Before modifying custody, a court must first determine "that a change in circumstances requires the modification of the award."[10] "The change in circumstances 'must be demonstrated relative to the facts and circumstances that existed at the time of

---

[8]   *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (quoting *Wells v. Barile*, 358 P.3d 583, 588 (Alaska 2015)).

[9]   *See McLane v. Paul*, 189 P.3d 1039, 1043 (Alaska 2008) (holding that substantial change in circumstances is threshold matter that must be decided first).

[10]   AS 25.20.110(a).

the prior custody order that the party seeks to modify.' "[11] Jennifer contends that the superior court erred in finding a substantial change in circumstances because its findings actually demonstrated "no substantial change to any material facts existing in the prior custody order." We agree that several factual findings underlying the court's determination are clearly erroneous. And once those findings are removed from the equation, the remaining facts, without further explanation, leave us uncertain as to whether a custody modification was justified.

The superior court based its substantial change in circumstances determination on these five findings of fact:

> 1. [Geoffrey] obtained local employment in Petersburg and no longer travels for work.
>
> 2. The children are struggling and not doing well in school.
>
> 3. [Jennifer] is interfering with the children's visitation and communication with their father including not keeping him apprised of school work and activities.
>
> 4. [The oldest child] has had to assume a caregiver role for his siblings because of [Jennifer's] work schedule.
>
> 5. [Geoffrey] appears to now be able to put the children's interests ahead of his own and has taken an active interest in their welfare.

The prior custody order for purposes of comparison is the 2016 order. The facts underlying that order therefore form the baseline for whether a change in circumstances has occurred.

First, the superior court's finding that Geoffrey has "obtained local employment in Petersburg" does not appear to show a change in circumstances. The

---

[11] *Nelson v. Nelson*, 263 P.3d 49, 52 (Alaska 2011) (quoting *Peterson v. Swarthout*, 214 P.3d 332, 341 (Alaska 2009)).

2016 order states that Geoffrey was working a full-time job in Petersburg at that time. Although he apparently has had other jobs in the meantime that did require travel, obtaining local employment is not a change from 2016.

Second, Jennifer's poor communication with Geoffrey does not appear to be new. In the 2016 order the court stated that its "main concern for these children is their parents' hostility towards each other and their inability or unwillingness to communicate on a responsible level about their children," and it encouraged both parties to do better.

Four other findings of changed circumstances remain for our consideration: (1) the children's struggles in school, (2) Jennifer's interference with visitation, (3) the oldest child's assumption of a caregiver role for his siblings, and (4) Geoffrey's willingness and ability "to put the children's interests ahead of his own" and take "an active interest in their welfare." We question whether any of these changes may be deemed substantial, even in combination.

The record provides only weak support for a finding that the children's struggles in school were anything out of the ordinary; there was evidence that their teachers were in fact happy with their performance and impressed with Jennifer's efforts to support the children in their schoolwork. And we must reject the court's conclusion that the oldest child's assumption of "a caregiver role" for his younger siblings because of Jennifer's work schedule was a substantial change in circumstances. Many children assume such responsibilities as they get older, and there was no evidence that the couple's oldest child lacked the maturity to act in this role. The fact that this was required by Jennifer's work schedule does not change our view but rather reinforces it, particularly given the court's finding that she had "done her best under difficult

circumstances" and had taken on extra shifts because of Geoffrey's failure to keep up with his support payments.[12]

We also question the court's reliance on Geoffrey's newfound ability "to put the children's interests ahead of his own." We note again the court's contemporaneous finding that Geoffrey had "[i]n the past . . . actively tried to sabotage [Jennifer's] custodial rights through making unwarranted calls for 'welfare checks' and spreading false rumors." This behavior was not all "in the past." Even in this appeal, rather than taking responsibility for this misconduct, Geoffrey refers to the OCS investigation as evidence of "possible verbal and physical abuse of [the] children" and refers to unnamed "callers" who originated these complaints. While we necessarily defer to the superior court's judgments about maturity and sincerity that can be drawn from in-court testimony,[13] we struggle to find any other support in the record for a conclusion that Geoffrey's ability "to put the children's interests ahead of his own" has substantially changed since 2016.

The remaining change cited by the superior court — Jennifer's interference with Geoffrey's visitation — may constitute a substantial change in circumstances if the interference is found to be substantial.[14] But given that the court cited five justifications for its substantial change determination and we have found several of them to be weak

_____

[12]     We note further that if Geoffrey's failure to pay child support was unreasonable, the court would be required to consider this history when ruling on his motion to modify. AS 25.20.110(b).

[13]     *See Solomon v. Solomon*, 420 P.3d 1234, 1243 (Alaska 2018) ("The superior court, having heard live testimony, is in a much better position than we are to determine the proper inferences to be drawn from the evidence in this case.").

[14]     *See Graham R. v. Jane S.*, 334 P.3d 688, 694-95 (Alaska 2014).

or clearly mistaken, we must vacate the order and require the court to consider the question again.

**B.    The Superior Court's Consideration Of Jennifer's Allegations Of Domestic Violence Was Inadequate.**

We also address the domestic violence issue that will be important to any further modifications of custody.   Jennifer argues that, since the outset of these proceedings in 2015, the superior court has erred by failing to develop the record concerning allegations of domestic violence and by failing to find that Geoffrey has a history of domestic violence.[15]  She also argues that because the court should have found that Geoffrey had a history of domestic violence, it erred by failing to apply the domestic violence presumption against awarding him custody.[16]  We agree that the court had an obligation to make detailed findings on Jennifer's allegations of domestic violence and that it was error not to do so.  Whether Geoffrey has a history of domestic violence depends on the court's future findings; we cannot decide that issue in the first instance on this record.

We have held that "[t]he superior court must make detailed findings on alleged incidents of domestic violence."[17]  " '[T]he requirement that . . . trial judge[s] file findings of fact' assures us that they have 'exercised care in ascertaining the facts, and

---

[15]    *See* AS 25.24.150(h) ("A parent has a history of domestic violence . . . if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence.").

[16]    *See* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.").

[17]    *Sarah D. v. John D.*, 352 P.3d 419, 429 (Alaska 2015).

ha[ve] employed both skill and judgment in reducing [their] thoughts on contested matters to precise and pertinent findings while the evidence is still fresh in [their] mind[s].' "[18]

In the initial 2015 custody order the court explicitly addressed Jennifer's allegations of Geoffrey's domestic violence, holding that although it could not find a history of domestic violence on the record in front of it, it was a "very close" question. The court had considered two incidents: one in which Geoffrey broke into Jennifer's apartment and damaged her television, and the second in which he pushed her in front of the children. The court also noted the "considerable evidence" that Geoffrey verbally abused Jennifer. Though finding no "history," the court did not explicitly determine whether any of the incidents it considered amounted to domestic violence, looking only to whether Jennifer suffered physical injury or was placed in fear of imminent physical injury — questions that are relevant but not determinative of whether domestic violence has occurred.[19] The next substantive custody order, in 2016, cited to the 2015 finding that Geoffrey did not have a history of domestic violence; Jennifer had made no new allegations of domestic violence at the time.

In 2017, however, Jennifer did bring new allegations of domestic violence to the court's attention, including threats of violence and unwanted sexual advances. When some of these allegations were made and supported in the domestic violence protective order proceeding, the same judge who presided over the custody case heard

---

[18] *Id.* (alterations in original) (quoting *Merrill v. Merrill*, 368 P.2d 546, 548 (Alaska 1962)).

[19] Some crimes of domestic violence, such as criminal trespass, criminal mischief, and harassment, have no physical injury or fear element. *See* AS 18.66.990(3); AS 11.46.320(a)(2) (criminal trespass in the first degree); AS 11.46.482-.486 (criminal mischief in the third, fourth, and fifth degrees); AS 11.61.120(a)(2)-(4) (harassment in the second degree).

Jennifer's testimony and decided that her allegations justified first a 20-day order and then a long-term order. The court acknowledged those allegations and findings in at least one order in the custody case, yet it made no specific findings about them for purposes of the domestic violence best interests factor and the presumption against awarding custody to the perpetrator.

We recognize that Jennifer did not appeal from the 2017 custody order; we also recognize that Jennifer's opposition to Geoffrey's most recent custody motion was short on detail and did not raise domestic violence as an issue. Nor did she testify about domestic violence at the hearing, and the court did not ask about it.[20] Jennifer's testimony, rather, focused on the issues of school and work that were the basis of Geoffrey's motion. The court's written order methodically addressed all the statutory best interests factors, including domestic violence, again finding that Geoffrey did not have "a history of perpetrating domestic violence." But the only incident the court referred to involved the dismissed petition filed by Geoffrey's current wife.

Jennifer's motion for reconsideration, filed after she had obtained the services of an attorney, reminded the court of the case's history of alleged incidents and — in the parallel domestic violence proceeding — the court's actual findings of multiple incidents of domestic violence. We do not ordinarily require courts to consider issues raised for the first time on reconsideration.[21] But we view the circumstances here

---

[20]     *See Williams v. Barbee*, 243 P.3d 995, 1004-05 (Alaska 2010) (observing "that AS 25.24.150(g) 'requires trial courts to consider *alleged incidents* of domestic violence' and that it is appropriate to 'question the pro se litigants about facts relevant to the issue' to determine whether an alleged event was an incident of domestic violence" (emphasis in original) (quoting *Parks v. Parks*, 214 P.3d 295, 302 (Alaska 2009))).

[21]     *Fannon v. Polo*, 436 P.3d 956, 960 (Alaska 2019) (observing that "a court is not required to consider an issue raised for the first time in the context of a motion for
(continued...)

as unique. The reconsideration motion did not raise new issues but rather reminded the court of what was already in the record: evidence highly relevant to one of the best interests factors, previously acknowledged by the court, which an unrepresented litigant like Jennifer could reasonably believe did not have to be presented again for it to be considered in the best interests calculus.

We conclude that the superior court's failure to make detailed findings about the alleged incidents of domestic violence was error.

### C. There Is No Basis For A Finding Of A Disqualifying Judicial Bias.

Jennifer argues that the superior court had a "personal gender bias" against her, pointing to its dismissal of her allegations of domestic violence. She also argues that the court's bias resulted in violations of her constitutional rights to due process and equal protection.

A party claiming bias must prove that the judge "formed an unfavorable opinion of the party from extrajudicial information"[22] or that the judge "hear[d], learn[ed], or d[id] something intrajudicially so prejudicial that further participation would be unfair."[23] Jennifer's arguments of bias rely solely on the fact that the court ruled against her on a number of issues.[24] "As we have previously reminded . . . litigants,

---

[21] (...continued) reconsideration").

[22] *Downs v. Downs*, 440 P.3d 294, 299-300 (Alaska 2019).

[23] *Id.* at 300 (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)).

[24] Jennifer does point to a comment by the court at a hearing and social media threads by others complaining about perceived biases. These comments do not show that the court formed an opinion based on extrajudicial information or that it was engaging in intrajudicial conduct that would render further proceedings unfair.

'judicial bias should not be inferred merely from adverse rulings.' "[25]  We necessarily reject Jennifer's claim that the superior court judge was biased against her.

## V.    CONCLUSION

We VACATE the January 10, 2020 custody order and REMAND for further proceedings consistent with this opinion.  Although we are confident that the superior court will do so anyway, we urge it to act expeditiously on the issues remanded. We do not retain jurisdiction.

---

[25]    *Kinnan v. Sitka Counseling*, 349 P.3d 153, 159 (Alaska 2015) (quoting *Khalsa v. Chose*, 261 P.3d 367, 376 (Alaska 2011)).